FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AIMEE S., [1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY, <br><br> Defendant. | No. 1:21-CV-03041-ACE <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS <br><br><br> **ECF Nos. 16, 18** |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 16, 18.  Attorney D. James Tree represents Aimee S.  (Plaintiff); Special Assistant United States Attorney Jeffrey Staples represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

1

**JURISDICTION**

2       Plaintiff protectively filed an application for Disability Insurance Benefits

3  and Supplemental Security Income on June 28, 2018, alleging disability since

4  February 1, 2018 due to cervical degeneration, fibromyalgia, chronic headaches,

5  right and left knee pain, and osteoarthritis.[2]  Tr. 351-68, 202.  The applications

6  were denied initially and upon reconsideration.  Tr. 254-60, 262-75.

7  Administrative Law Judge (ALJ) Glenn G. Meyers held a hearing on April 14,

8  2020, Tr. 42-70, and issued an unfavorable decision on May 6, 2020.  Tr. 15-33.

9  Plaintiff requested review by the Appeals Council and the Appeals Council denied

10  the request for review on January 14, 2021.  Tr. 1-6.  The ALJ's 2020 decision

11  became the final decision of the Commissioner, which is appealable to the district

12  court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review

13  on March 11, 2021.  ECF No. 1.

14       **STANDARD OF REVIEW**

15       The ALJ is tasked with "determining credibility, resolving conflicts in

16  medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d

17  1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de*

18  *novo*, with deference to a reasonable interpretation of the applicable statutes.

19  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ

20

21       [2] Plaintiff previously filed for disability and supplemental security income

22  benefits in April 2006. *See* Tr. 75.  At a May 2009 hearing before an ALJ, Plaintiff

23  requested a closed period of disability from March 2003 through May 2008. *Id*.

24  Her claim was denied by the ALJ in a decision dated June 2009.  Tr. 72-89.  Her

25  claim was remanded to the Agency by this Court in October 2012 and again in

26  September 2016.  Tr. 95-117, 153-84.  In a decision dated June 18, 2018, an ALJ

27  granted Plaintiff's requested closed period of disability, finding she was disabled

28  from March 2003 through May 2008.  Tr. 190-201.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four the claimant bears the burden of establishing a prima facie case of disability. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498

(9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE FINDINGS

On May 6, 2020 the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 15-33.

At step one, the ALJ found Plaintiff, who meets the insured status requirements of the Social Security Act through December 31, 2023, had not engaged in substantial gainful activity since her alleged onset date. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: fibromyalgia, degenerative joint disease, degenerative disc disease, obesity, depressive disorder, anxiety disorder, and substance addiction disorder. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id*.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform sedentary work, with the following nonexertional limitations:

> [Plaintiff] can occasionally stoop and crouch; she cannot crawl, kneel, or climb ramps, stairs, ropes, ladders, and scaffolds; she can engage in unskilled, repetitive, routine tasks in 2-hour increments; she can have no contact with the general public; she can work in proximity to but not in coordination with co-workers; she can have occasional contact with supervisors; she will be 10 [percent] less productive than the average worker in the workplace; and she will be absent from work 6 times per year.

Tr. 22.

At step four, the ALJ found Plaintiff was unable to perform past relevant work. Tr. 26.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of assembler, escort vehicle driver, and document preparer. Tr. 26-27.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision. Tr. 28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act. The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff raises the following issues for review (1) whether the ALJ properly evaluated the medical opinion evidence; (2) whether the ALJ conducted a proper step-two analysis; (3) whether the ALJ properly evaluated Plaintiff's symptom complaints; (4) whether the RFC is consistent with disability; and (5) whether the ALJ met his step five burden. ECF No. 16 at 2.

## DISCUSSION

### A. Medical Opinions

Plaintiff contends the ALJ erred by not properly assessing the medical opinions of Patrick Metoyer, Ph.D., Michael Regets, Ph.D., and Matthew Comrie, Psy.D. ECF No. 16 at 15-17.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide the ALJ will no longer give any specific evidentiary

weight to medical opinions or prior administrative medical findings. *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may explain how he or she considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record. *Id.* Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

The Ninth Circuit recently addressed the issue of whether the new regulatory framework displaces the longstanding case law requiring an ALJ to provide specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the new regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

### 1. Dr. Metoyer

In September 2018, Dr. Metoyer performed a mental evaluation and provided an opinion on Plaintiff's level of functioning. Tr. 567-71. Dr. Metoyer diagnosed her with panic disorder and major depressive disorder, recurrent and moderate. Tr. 570. He opined Plaintiff appeared to have the ability to reason and understand, had some adaption skills, and that her remote memory was intact, but that her recent and immediate memory were mildly impaired. Tr. 571. He opined her ability to sustain concentration and persistence were adequate based on the evaluation, noting she described difficulty following through on tasks at home. *Id*. He noted her report of "significant interpersonal challenges in her personal life and prior work environment as a result of anxiety and mood symptoms," and opined her ability to interact with coworkers and the public was "likely moderately impaired." *Id*. He opined that due to her anxiety and mood symptoms and tendency to isolate herself from others, her ability to maintain regular attendance in

the workplace was moderately impaired; and her ability to complete a regular workday or workweek without interruption from anxiety and mood symptoms is "likely moderately impaired." *Id*. He opined her ability to deal with the usual stress encountered in the workplace "is markedly impaired if it involved persistent activity, complex tasks, task pressure, interacting with other individuals." *Id*. He also opined that if awarded benefits she "appears to require the assistance of a payee at this time," and he noted she appeared to have physical limitations that would be better assessed by a medical provider. Tr. 570-71.

### 2. Dr. Regets and Dr. Comrie

In October 2018, Dr. Regets, a state agency psychological consultant, reviewed Plaintiff's records and rendered an opinion on her level of functioning. Tr. 213-15. He opined she could sustain adequate concentration, persistence, and pace to perform simple, routine, tasks and "more well-known or learned more detailed tasks," for up to two consecutive hours with normal breaks for a regular eight-hour workday and 40-hour workweek. He opined Plaintiff would "do best in a work setting that does not required frequent interaction with coworkers [and] may have difficulties at times with attendance and punctuality but can perform within acceptable workplace standards." Tr. 214. He also opined she would "do best in a work setting that does not require more than casual or incidental interaction with the general public," and in a stable, low pressure work setting with clear expectations of the work to be performed. *Id*. In January 2019, Dr. Comrie affirmed Dr. Regets' opinion. Tr. 230-32.

The ALJ found the opinions of Dr. Metoyer, Dr. Regets, and Dr. Comrie persuasive "given the lack on contrary allegation on [Plaintiff's] part and lack of conflicting opinion evidence." Tr. 24. In a footnote, however, the ALJ also found that "to the extent that Dr. Metoyer's opinion is inconsistent" with the opinions of the state agency reviewers, "I find [the state agency reviewers] opinions more persuasive because their assessments were more specific and aligned with the

requirements of social security cases"; and "descriptors like mild, moderate, and marked are not particularly appropriate or helpful in determining a [RFC]." *Id*.

Under the new regulations, supportability and consistency are the most important factors to be considered in evaluating the persuasiveness of an opinion, and the ALJ must explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is. 20 C.F.R. § 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Here, the ALJ did not provide even a minimal articulation of how these factors were considered; the ALJ summarizes the psychologists' opinions but does not provide any analysis. *See* Tr. 23-24. For example, there is no analysis or discussion of the examining psychologist's objective findings upon mental status exam, or the supporting explanations of any of the psychologists, and no discussion of how the opinions were consistent or inconsistent with each other or the record as a whole. *Id*.

Additionally, the ALJ's findings are contradictory. First, the ALJ indicates he finds all the opinions persuasive because of a "lack of conflicting opinion evidence." Tr. 24. However, in a footnote he finds that "to the extent that Dr. Metoyer's opinion is inconsistent" with the state agency opinions, the opinions of Dr. Comrie and Dr. Regets are more persuasive. *Id*. n.1. The ALJ notes this is because the state agency opinions are more "specific" and "aligned with the requirements of Social Security cases" than Dr. Metoyer's opinion, but does not explain his conclusions. *See* Tr. 23-25. Review of Dr. Metoyer's opinion, for example, shows specific findings from his in-person evaluation, which included a clinical interview and objective findings from a mental status exam, and he noted he reviewed multiple treatment records as well. *See* Tr. 567-71. While his opinion uses terms such as mild, moderate, and marked, Plaintiff points out that the state agency providers use these and similar descriptors. ECF No. 16 at 16-17. Due to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 9

the ALJ's lack of analysis, it is unclear whether the ALJ found Dr. Metoyer's opinion consistent or inconsistent with the state agency opinions, and to what extent.

Defendant argues the ALJ reasonably assessed the persuasiveness of the medical opinions based upon their supportability and consistency with the record. ECF No. 18 at 8. As explained *supra*, however, the ALJ provided brief and contradictory findings concerning the opinion evidence, without discussion of the factors required under the regulations or analysis of the medical opinions. This is legally insufficient. Without the ALJ offering more than his stated conclusions, the Court is unable to meaningfully review whether the ALJ's interpretation of the evidence is reasonable. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding).

Defendant also contends that there is no conflict for the court to resolve, as the ALJ found the opinions of Dr. Metoyer and the state agency reviewers equally persuasive, and also found Dr. Metoyer's entire opinion persuasive. ECF No. 18 at 10-11. This is not clear from the ALJ's findings, as he found there was not conflicting opinion evidence, yet also suggested Dr. Metoyer's opinion was in conflict with the state agency psychologists. While Defendant offers an analysis of the evidence, including that the ALJ found Dr. Metoyer's entire opinion persuasive for reasons including that it was consistent with the opinion of the state agency psychologists, ECF No. 18 at 11, ALJ did not offer such analysis, and thus the Court will not consider the *post hoc* rationalization. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The ALJ erred in failing to analyze the persuasiveness of the medical opinion evidence under the factors required by the regulations, and his findings concerning the medical opinions of Dr. Metoyer, Dr. Comrie, and Dr. Regets are not supported by substantial evidence.  Upon remand the ALJ is instructed to reconsider all medical opinion evidence under the factors required by the regulations, and to incorporate the opinions into the RFC or give reasons supported by substantial evidence to reject them.

**B. Step Two**

Plaintiff contends the ALJ erred at step two by not properly assessing Plaintiff's migraines or hand limitations.  ECF No. 16 at 17.  At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any severe medically determinable impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1521, 416.921.  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§ 404.1522, 416.922(a).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).  The claimant bears the burden of demonstrating that an impairment is medically determinable and severe. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

Step two is a de minimus screening device to dispose of groundless claims. *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of

impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). SSR 19-4p, *Evaluating Cases Involving Primary Headache Disorders*, effective at the time of the ALJ's decision, provides guidance on how to evaluate primary headache disorders. SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019).

Here the ALJ found "while [Plaintiff] alleges headaches/migraines, I do not consider this condition to be a separate medically determinable impairment given the lack of objective evidence." Tr. 21. Plaintiff contends the ALJ harmfully erred by discounting Plaintiff's migraines "given the lack of objective evidence" because under the Agency's own guidance found in SSR 19-4p, headaches may be assessed based on a diagnosis and treatment records showing response to treatment or lack thereof, both of which are in this record. ECF No. 16 at 18; *see* SSR 19-4p. Defendant argues substantial evidence supports the ALJ's step two finding because step two was decided in Plaintiff's favor, and the ALJ discussed all of Plaintiff's alleged limitations in assessing her RFC, including her complaints of headaches. ECF No. 18 at 12-13.

The ALJ found headaches were not a medically determinable impairment due to a lack of objective evidence. Tr. 25. SSR 19-4p explains that while an ALJ may not establish the existence of an MDI based only on a diagnosis or a statement of symptoms, a headache disorder may be assessed on a combination of findings including a headache disorder diagnosis, observation of a typical headache event, remarkable or unremarkable findings on laboratory tests, and response to treatment. SSR 19-4p. Here, treatment records show diagnosis and treatment for chronic headaches, including migraines and/or muscle tension headaches with associated nausea, photophobia and sound sensitivity. *See e.g.*, Tr. 487, 541-42, 549, 567, 695-96. In July 2017, for example, providers documented increased frequency of headaches, noting she reported about three a week that did not respond to Imitrex, along with muscle tension headaches on the other days; her provider noted nausea and light and sound sensitivity from headaches. Tr. 541.

Upon physical exam, her provider also observed tenderness over her entire posterior neck and bilateral cervical spine. Tr. 542. While the ALJ concluded her headaches "were not as severe or as frequent as she portrayed them" because she did not take medication for headaches, Tr. 25, records show treatment has included medications such as sumatriptan (Imitrex), nortriptyline, and daily Excedrin for headaches. *See e.g*., Tr. 446, 541, 546, 551. Additionally, while the ALJ discounted the severity of her headaches because "medication was helpful for improving her headaches after she had sought treatment for headaches in May 2019," this conclusion is not supported by the record, which shows the medication the ALJ refers to is an intravenous "migraine cocktail" administered in the emergency room at one visit in May 2019. Tr. 695-97. There is no evidence she regularly received such treatment, and in 2020 she testified she had headaches about three times a week that were not controlled by Imitrex. Tr. 55-57.

While the ALJ found she reported "severe daily headaches to the agency" and that this was inconsistent with reports to providers, the headache questionnaire she returned to the agency in August 2018 shows she reported "almost daily" headaches, noting the dates of her last three headaches as August 23rd, 25th and August 27th. Tr. 445-46. This is consistent with her report to the consultative examiner of headaches a couple times a week in September 2018, along with her report in 2017 that she experienced migraines three times a week and muscle tension headaches on other days. Tr. 541, 567. An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g., Holohan v Massanari*, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). The ALJ's finding that Plaintiff's headaches were not a medically determinable impairment is not supported by substantial evidence.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant argues any error is harmless because the step was resolved in Plaintiff's favor. ECF No. 18 at 13. Plaintiff points out, however, that in finding headaches were not a medically determinable impairment, as opposed to severe or nonsevere, the ALJ did not consider headaches in the later steps of the sequential analysis, including step three under the neurological disorder listings or the RFC. ECF No. 16 at 18-19; *see also* SSR 96-8p. As the claim is being remanded to reconsider the medical opinion evidence, discussed *supra*, the Court declines to engage in harmless error analysis here.

Plaintiff also contends the ALJ erred by failing to address Plaintiff's hand impairments at step two. ECF No. 16 at 19-20. As the case is being remanded to readdress the medical opinion evidence and Plaintiff's headaches, the ALJ is instructed on remand to reconsider the full medical record with the assistance of medical expert testimony, and to reassess Plaintiff's medically determinable impairments and whether they are severe at step two.

**C. Plaintiff's Subjective Statements**

Plaintiff contends the ALJ erred by improperly assessing Plaintiff's subjective complaints. ECF No. 16 at 4-15. It is the province of the ALJ to make determinations regarding a claimant's subjective statements. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not

credible and what evidence undermines the claimant's complaints." *Lester,* 81
F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's statements concerning the intensity,
persistence and limiting effects of her symptoms were not consistent with the
medical evidence and other evidence in the record. Tr. 23. The ALJ's evaluation
of Plaintiff's symptom claims and the resulting limitations largely relies on the
ALJ's assessment of the medical evidence. Having determined a remand is
necessary to reassess the medical opinion evidence and step two findings, any
reevaluation must necessarily entail a reassessment of Plaintiff's subjective
symptom claims. Thus, the Court need not reach this issue and on remand the ALJ
must also carefully reevaluate Plaintiff's symptom claims in the context of the
entire record. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because
we remand the case to the ALJ for the reasons stated, we decline to reach
[plaintiff's] alternative ground for remand.").

**D. RFC and Step Five findings**

Plaintiff also argues the RFC was consistent with disability and that the ALJ
failed to meet his step five burden. ECF No. 16 at 3-4, 20-21. As this case is
being remanded for the ALJ to reassess the medical opinion evidence and the step
two findings, the ALJ is instructed to perform the sequential analysis anew,
including reconsidering Plaintiff's RFC as well as the step five findings.

## CONCLUSION

Plaintiff argues the decision should be reversed and remanded for the
payment of benefits. The Court has the discretion to remand the case for additional
evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court
may award benefits if the record has been fully developed and further
administrative proceedings would serve no useful purpose. *Id.* Remand is
appropriate when additional administrative proceedings could remedy defects.
*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court

finds that further development, including medical expert testimony, is necessary for a proper determination.

The ALJ's decision is not supported by substantial evidence and not free of harmful error. On remand, the ALJ shall reevaluate the medical evidence of record, perform the sequential analysis anew making findings on each of the five steps of the sequential evaluation process, reassess the medical opinion evidence and plaintiff's subjective complaints with the assistance of medical expert testimony, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim. Nothing herein should be read as a suggestion that any particular decision or decisions on remand would be more appropriate than another.

Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3.    The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 12, 2023.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16